IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

BEVERLY A.B.,

       Plaintiff,

  v.                                     Civil Action No.
                                          5:17-CV-1044 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

---

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF

CONBOY, McKAY LAW FIRM      LAWRENCE D. HASSELER, ESQ.
307 State Street
Carthage, New York 13619

FOR DEFENDANT

HON. GRANT C. JAQUITH        JAMES DESIR, ESQ.
Acting United States Attorney   Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on August 9, 2018, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated: August 10, 2018
Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
BEVERLY A. B.

                         Plaintiff,

vs.                            5:17-CV-1044

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on August 9, 2018, at the James Hanley Federal Building, 100 South Clinton Street, Syracuse, New York, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

```
For Plaintiff:      CONBOY, McKAY LAW FIRM
                    Attorneys at Law
                    307 State Street
                    Carthage, New York  13619
                      BY:  LAWRENCE D. HASSELER, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of Regional Counsel
                    Region II
                    26 Federal Plaza - Room 3904
                    New York, New York  10278
                      BY:  JAMES DESIR, ESQ.
```

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1  (In Chambers, Counsel present by telephone.)

2  THE COURT: Okay, I'll have to let that be the last
3  word.

4  I have before me a request for a judicial review of
5  an adverse determination by the Acting Commissioner pursuant
6  to 42 United States Code Section 405(g) and 1383(c)(3).

7  The background is as follows: The plaintiff was
8  born in November of 1962, she's currently 55 years of age.
9  She is separated and lives alone in Carthage, New York.
10  Plaintiff has a high school diploma and has taken two years
11  of college courses. She has no driver's license. She is
12  right-hand dominant. She is 5 foot 2 inches in height and
13  weighs 150 pounds. She has several cats and changes five
14  litter boxes daily to accommodate her pets.

15  Physically, plaintiff was born with one kidney.
16  She has been treated for chronic kidney disease, originally
17  stage 3, now characterized as stage 4. To put that in
18  perspective, a stage 5 chronic kidney disease patient would
19  require dialysis. She requires a stent replacement one time
20  per year. Generally speaking, her condition is stable and I
21  believe she characterized it as such at page 427 and 428.

22  She has several treatment providers including
23  Dr. Jocelyn Beane of the Family Medical of Carthage appears
24  to be her primary care provider. She also sees FNP Kathy Der
25  at that office, approximately every three months. She treats

          with Nephrology Associates including Dr. Hongalgi and Khalid
          Sindhu as well as FNP Erin Birchenough.  Her surgeon who does
          her stent replacements is Dr. Oleg Shapiro who practices at
          University Hospital here in Syracuse.  Plaintiff also has
          been treated for neck and lower back pain, including through
          Pain Solutions of Northern New York, Dr. Bhupinder Bolla.
          She receives injections in her neck.  She has suffered in the
          past deep vein thrombosis and has been on Coumadin.  She also
          complains of arthritis in her arms and legs, back, hands, and
          feet.

          The plaintiff last worked in November of 2009 two
          to three times per week for five months at a Nice N Easy
          convenience store.  Prior to that she had several places of
          casual employment.  Her employment history is at 137 of the
          administrative transcript.

          In terms of daily activities, she mows lawn, her
          lawn, uses the computer, watches television, cooks, cleans,
          does dishes, does crossword puzzles, laundry, and takes care
          of her pets.

          The case has a tortured procedural history dating
          back to her application for Supplemental Security Income
          payments in July of 2010 alleging an onset date of March 24,
          2010.

          A hearing was conducted on July 5, 2011 by
          Administrative Law Judge Bruce Fein who issued a decision

1  unfavorable to the plaintiff on August 13, 2011.  The Social
2  Security Administration Appeals Council denied review of that
3  determination on October 2, 2012.  The matter was then
4  brought into this court by the claimant and ultimately was
5  remanded pursuant to a consent order on April 17, 2013 for
6  further proceedings.
7       The Social Security Administration Appeals Council
8  vacated Judge Fein's decision on August 5, 2013.  Judge Fein
9  held a second hearing on January 29, 2014, and issued another
10 unfavorable decision on September 24, 2014.
11      The Social Security Administration Appeals Council
12 issued a decision on January 29, 2016, vacating that
13 determination and remanding the matter for consideration by
14 another administrative law judge.  In its decision at page
15 483 and 484 of the administrative transcript, the Appeals
16 Council directed the new administrative law judge to give
17 further consideration to the treating source opinion of
18 Dr. Sindhu and to the opinions of Dr. Coleman, required the
19 evaluation of the opinion of FNP Der, required the ALJ to
20 rule on the claimant's objections to Dr. Coleman's opinions,
21 and fourthly, if warranted by the expanded record, obtain
22 evidence from a vocational expert to clarify the effect of
23 the assessed limitations on claimant's occupational base.
24      ALJ Barry Ryan, to whom the matter was subsequently
25 assigned, held a hearing on June 7, 2016, and on July 8,

2016, issued another unfavorable opinion. That became a final determination of the agency on August 14, 2017 when the Appeals Council denied review of that determination.

In his decision, ALJ Ryan applied the familiar five-step test for determining disability.

At step one, concluded plaintiff had not engaged in substantial gainful activity since her alleged onset date.

At step two, concluded that plaintiff does suffer from severe impairments, including congenital loss of right kidney, hydronephrosis remaining left kidney, deep venous thrombosis controlled by Coumadin, and chronic renal insufficiency.

At step three, he concluded that plaintiff's conditions did not meet or medically equal any of the listed presumptively disabling conditions in the Commissioner's regulations.

In terms of an RFC, after surveying the medical evidence, ALJ Ryan concluded that plaintiff retains the RFC to perform a full range of light work, and with no identified postural, communicative, environmental, or other work limitations.

Applying that RFC at step four, the ALJ concluded that plaintiff has no past relevant work, and then applying the Medical Vocational Guidelines or Grids contained in the regulations, concluded that a finding of no disability was

directed by Grid Rule 202.20 and therefore plaintiff was not disabled at the relevant times. And when I say relevant times, I agree with the Commissioner, that although plaintiff may well now qualify for benefits, the relevant period is from the time of her application for benefits since this is an SSI case, from July 13, 2010 to the date of the administrative law judge's determination on July 8, 2016.

As you know, the standard of review is very deferential. I must determine whether correct legal principles were applied, and the hearing -- the ALJ's decision is supported by substantial evidence.

In terms of treating source, I agree that opinions of Dr. Sindhu at 1021 and FNP Der at 1445 and 1020 were properly rejected. FNP Der is not an acceptable medical source and in any event, neither one of those contains the function-by-function opinions that a treating source that would be deemed controlling should show. Instead, they go to the ultimate issue that is reserved to the Commissioner.

In terms of whether there are gaps in the record, first of all, it is clear that it is plaintiff's burden through step four to show work-related limitations resulting from her medical conditions. The plaintiff's counsel suggested that the record was closed and declined the opportunity to submit additional materials, that's at page 452. Moreover, the records show that plaintiff's condition

1  was stable, she admitted that in her testimony. I have --
2  she undergoes yearly stent replacement, but beyond that,
3  according to Dr. Coleman, she is operating at a -- she has
4  remained remarkably stable since 2000, I'm reading from 1012
5  of the record, her kidney function is approximately 30 to
6  35 percent of normal, a level very adequate to maintain good
7  health. Although Dr. Coleman may have nephrology as a
8  secondary area of expertise, he is an expert in that area.
9          The RFC is well supported by the interrogatory
10 responses of Dr. Coleman and Dr. Rivera's consultative report
11 which can provide substantial evidence.
12         The inability to cross-examine, I agree, if it is
13 an error, and I'm not sure that it is required, is harmless
14 because the plaintiff was given an adequate opportunity to
15 provide cross-examining interrogatories.
16         I would be troubled somewhat by the statement that
17 there is a need to be absent from work for medical
18 appointments but there is no quantification of that, and
19 there's no evidence in the record that would suggest that it
20 is more than relatively infrequent. She testified that she
21 sees her health care providers every three months and she
22 undergoes stent replacement yearly, so there's no evidence
23 that I could find in the record that would suggest that she
24 would be absent to a level that would be inconsistent with
25 gainful employment.

1          The conflict in the record as to how much water she
2  has to drink and how many times she has to urinate, there
3  was, again, no quantification of that but in any event, if
4  there is a conflict, it is for the ALJ to resolve.
5          The light work finding may be inconsistent with the
6  findings of ALJ Fein but ALJ Ryan properly regarded this
7  *de novo* and, as I indicated previously, I believe his RFC
8  determination is supported by Dr. Coleman's opinion as well
9  as Dr. Rivera's consultative report.
10         In terms of credibility, an issue was raised by
11 claimant, plaintiff testified to greater limitations although
12 not a great amount of specifics, but the ALJ properly applied
13 the two-step test for determining credibility.
14         The focus clearly in this case is on the kidney and
15 as I indicated during oral argument, I have carefully
16 reviewed the medical records, including from Dr. Shapiro,
17 Dr. Jocelyn Beane and FNP Der, Dr. Hongalgi, and FNP
18 Birchenough.  They all seem to indicate and confirm
19 plaintiff's statement that her position -- her condition is
20 stable.  Dr. Beane and FNP Der, for example, on August 15 --
21 August 25, 2015 report states no physical disability,
22 activities of daily living normal, that's at 1415.  On
23 September 17, 2014, a similar entry, that's at 1361.
24 Dr. Hongalgi on November 20, 2013 characterized plaintiff as
25 having a stable kidney function, that's at 977.  FNP

1  Birchenough on several occasions referred to the plaintiff's
2  condition as stable at baseline, including at 1066, 1062,
3  1054, at -- on May 18, 2015, stated that plaintiff is feeling
4  well and stable at baseline, that's at 1068 to 1070.  Again,
5  same thing at 1072 to 74, and 1076 to 1078.  So in my view,
6  the ALJ's credibility determination was supported by
7  substantial evidence.
8            In terms of vocational expert, I agree with the
9  Commissioner that the directive of the Appeals Council was
10 permissive -- if required, call a vocational expert.  There
11 is no evidence in this case of nonexertional limitations that
12 would significantly erode the job base, so I believe that the
13 requirements of SSR 85-15 were met and do not require the
14 testimony of a vocational expert.
15           So I am going to grant judgment on the pleadings to
16 the defendant.  I believe that the Commissioner's
17 determination results from the application of proper legal
18 principles and is supported by substantial evidence.
19           Thank you both for excellent presentations, hope
20 you have a good afternoon.
21           MR. DESIR:  Thank you, your Honor.
22           MR. HASSELER:  Thank you, your Honor.
23                (Court Adjourned, 11:41 a.m.)
24
25

```
1    CERTIFICATE OF OFFICIAL REPORTER
2
3
4         I, JODI L. HIBBARD, RPR, CRR, CSR, Federal
5    Official Realtime Court Reporter, in and for the
6    United States District Court for the Northern
7    District of New York, DO HEREBY CERTIFY that
8    pursuant to Section 753, Title 28, United States
9    Code, that the foregoing is a true and correct
10   transcript of the stenographically reported
11   proceedings held in the above-entitled matter and
12   that the transcript page format is in conformance
13   with the regulations of the Judicial Conference of
14   the United States.
15
16                    Dated this 9th day of August, 2018.
17
18
19                    /S/ JODI L. HIBBARD
20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21
22
23
24
25
```

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547